**Harold J. FLAHAVE, Jr., Relator,**

v.

**LANG MEAT PACKING, Respondent,**

**and**

**Commissioner of Economic Security, Respondent.**

**No. C2–83–1312.**

Court of Appeals of Minnesota.

Feb. 1, 1984.

Gerald W. Von Korff, Sauk Rapids, for relator.

John Lang, pro se, respondent Lang Meat Packing.

Hubert H. Humphrey, III, Atty. Gen., Paul N. Heckt, Sp. Asst. Atty. Gen., St. Paul, for respondent Com'r of Economic Sec.

Heard, considered and decided by POPO-VICH, C.J., and FOLEY and SEDGWICK, JJ.

## OPINION

FOLEY, Judge.

Claimant-Flahave appeals the decision of the representative of the commissioner finding that he was disqualified from receiving unemployment compensation benefits under Minn.Stat. § 268.09, subd. 1(2) because he was discharged for misconduct due to his failure to notify his employer of his intended absence from work on four occasions in one year. Flahave asserts that this decision is wrong because it is based on unreliable evidence submitted by the employer which is contradicted in the record and by Flahave's own testimony.

## FACTS

Flahave worked full time from October 28, 1980 to October 5, 1982 as a warehouse worker for Lang Meat Packing, a small family operated pet food producer, in Richmond, Minnesota.

Lang Meat Packing has a policy that requires employees to call in if they intend to be absent from work or tardy. Flahave was aware of the policy. Owner John Lang testified that Lang Meat Packing also had a policy that an employee could receive three written warnings for improper conduct in any twelve consecutive months; however, if there was a fourth incident of misconduct, the employee was to be discharged.

The hearing examiner found that in 1982, Flahave received three written warnings (on Jan. 29, Feb. 26, Aug. 13) for failing to report for work without notifying the employer. Lang testified that he placed these written warnings in a sealed envelope along with Flahave's paychecks. Flahave's foreman testified that Lang told him when he was planning to give Flahave a written warning. These warnings were noted by Lang on Flahave's employee work record and on a list of his absences.

Flahave testified that he did not receive any of these written warnings, he only remembered receiving two verbal warnings from his foreman. However, Flahave admits, and his foreman testified, that the other men in the plant kidded him that he had better not be late again.

On October 5, 1982 Flahave was scheduled to return to work at 7:30 a.m. following his week long absence for a compensated work injury. Flahave called Lang Meat Packing at about 7:30 a.m. and stated that he had to go to the dentist (unrelated to his work injury) and would be in to work after his appointment.

Flahave left the dentist's office at about 11:00 a.m. and returned home. He testified that he forgot to call his employer to advise him that he would not be coming to work. Lang called Flahave's home at about 11:30 a.m. Flahave's wife answered the phone and told Lang that Flahave was in bed sleeping. Flahave did not call his employer or report to work that day. At about 5:30 p.m. Lang called Flahave and told him that he was discharged.

The Appeal Tribunal determined that since "the discharge resulted from claimant's failure to report to work after his dentist appointment as he indicated he would do," his discharge was for misconduct, a disqualifying condition for receipt of unemployment compensation benefits.

On appeal, the commissioner's representative decided to remand the case for further hearing. On remand, the Appeal Tribunal took additional evidence and concluded that Flahave was discharged for misconduct. On appeal to the commissioner's representative for the second time, the representative "reviewed" all of the evidence," and concluded that Flahave was discharged for misconduct.

## ANALYSIS

■ A reviewing court is limited to a consideration of:

[W]hether the department kept within its jurisdiction; whether it proceeded on an erroneous theory of law; whether its action was so arbitrary and unreasonable that it represents its will and not its judgment; or whether the decision of the department is without evidence to support it.

*Lumpkin v. North Central Airlines, Inc.,* 296 Minn 456, 460, 209 N.W.2d 397, 400 (1973).

The instant case presents two issues that fall within this court's scope of review; (1) whether the findings of the commissioner's representative are supported by the evidence, and (2) whether failing to report to work without giving the employer notice on four occasions in one year in violation of the employer's policy, constitutes misconduct under Minn.Stat. § 268.09, subd. 1(2) (1982).

■ 1. The findings of the representative of the commissioner are to be reviewed in the light most favorable to his decision,

and where there is evidence reasonably tending to sustain them, the findings should not be disturbed. *Booher v. Transport Clearings of Twin Cities, Inc.,* 260 N.W.2d 181, 183 (Minn.1977). *See White v. Metropolitan Medical Center,* 332 N.W.2d 25 (Minn.1983).

The commissioner's representative noted that the testimony of the employer and the employee were contradictory on every major point. He therefore placed great weight on the ability of the two hearing examiners to judge the relative credibility of the witnesses. The hearing examiner in each instance chose to accept the employer's evidence that Flahave had received three written warnings for failing to report to work without notice to his employer before he was discharged for the fourth such incident. Flahave's uncorroborated statement, that he had never received the warnings, was disregarded. The employer's testimony was corroborated by copies of the warnings and the testimony of the foreman that the warnings were given.

Evaluating the entire record, we hold that the evidence reasonably tends to support the commissioner's finding that the employee had received three written warnings and was discharged following his fourth incident of failing to report to work without giving notice to his employer.

2. Minnesota Stat § 268.09, subd. 1 (1982), provides that an employee who is discharged for misconduct is disqualified from receiving unemployment compensation benefits.

The Minnesota Supreme Court has consistently applied the definition of misconduct described in *Tilseth v. Midwest Lumber Co.,* 295 Minn. 372, 375, 204 N.W.2d 644, 646 (1973), to particular fact patterns to determine whether an employee was discharged for disqualifying misconduct. *See Ideker v. LaCrescent Nursing Center, Inc.,* 296 Minn. 240, 207 N.W.2d 713 (1973); *Blom v. Madsen's Enterprises, Inc.,* 298 Minn. 573, 215 N.W.2d 791 (1974); *Thurik v. Department of Economic Security,* 288 N.W.2d 716 (Minn.1980). In *Ideker, supra,* the court states that the test for determining whether a claimant's conduct constitutes "misconduct" is "whether the conduct evinces a willful or wanton disregard for the employer's interests or demonstrates a lack of concern by the employee for his job." *Ideker, supra,* 207 N.W.2d at 714. This court has also applied the *Tilseth* definition. *See King v. Little Italy,* 341 N.W.2d 896 (Minn.App.1984).

Here, Flahave's repeated failure to call Lang Meat Packing, when he knew he was expected at work but intentionally did not go to work, evidences a "willful or wanton disregard" of his employer's interests, or misconduct under the *Tilseth* definition.

Support for this conclusion is found in *Moeller v. Minnesota Dept. of Transportation,* 281 N.W.2d 879 (Minn.1979), where the Minnesota Supreme Court held that repeated absences from work without good cause and without prior notice constitute misconduct even when those absences are due to alcoholism, because such absences evidence a willful disregard of the employer's interests. *Id.* at 882. In addition, the Iowa Appeals Court, which relies on the *Tilseth* definition of misconduct, has held that a claimant who had been warned about unexcused absences and then was either tardy or absent from work three subsequent times without his employer's permission, was discharged for misconduct. *Clark v. Iowa Dept. of Job Service,* 317 N.W.2d 517 (Iowa App.1982).

As the commissioner properly notes, Flahave's discharge comes under the "last straw doctrine" enunciated by the Michigan Supreme Court in *Giddens v. Appeal Board of Michigan Employment Security Commission,* 4 Mich.App. 526, 145 N.W.2d 294, 298 (1966). In *Giddens,* the Michigan Appeals Court held that claimant's past pattern of behavior, coupled with his unexcused absences from work for two consecutive days, demonstrated a "substantial disregard of the employer's interest and of the duties and obligations that the claimant owed to the employer." *Id.* 145 N.W.2d at 298. The court found claimant's final infraction, although not closely allied in time

or tenor to previous infractions of work rules, was the last straw, demonstrating conclusively the employee's utter disregard for the employer's interests. *Id.*

Here, the employer testified: "I gave him so many warnings which you'll have the slips for and finally I you know it just, you keep putting stuff on top of stuff and finally it breaks the camels back." Flahave's repeated infractions of his employer's work rule demonstrate his substantial disregard of his employer's interest and of the duties and obligations that he owed to his employer.

We affirm the decision of the representative of the commissioner that Flahave was discharged for misconduct and is disqualified under Minn.Stat. § 268.09, subd. 1(2) (1982), from receiving benefits.

Affirmed.