**Romez COLEMAN, Relator,**

v.

**REPRO PRINTING, INC., Commissioner of Economic Security, Respondents.**

**No. C5–85–661.**

Court of Appeals of Minnesota.

Sept. 24, 1985.

Larry E. Reed, Minneapolis, for relator.

Repro Printing, Inc., pro se.

Hubert H. Humphrey, III, Atty. Gen., Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Economic Sec.

Heard, considered, and decided by POPOVICH, C.J., and SEDGWICK and LANSING, JJ.

## OPINION

LANSING, Judge.

Romez Coleman appeals a decision of the Commissioner of Economic Security finding him ineligible to receive unemployment compensation benefits on the basis of misconduct. We affirm.

## FACTS

Repro Printing employed Romez Coleman as a bindery worker from May 5, 1976, to November 8, 1984. The employer prepared written warnings for failure to work a full 40-hour week on November 18 and November 25, 1983. Coleman refused to accept them, saying that if given the warnings he would "shove them down [the employer's] throat."

On November 5, 1984, the shop foreman warned Coleman about excessive talking to other employees. On the following day, Coleman was again observed talking to a co-worker and showing him a magazine during his work hours. The foreman told Coleman he would receive a written warning, and later in the day the foreman instructed Coleman to talk with the supervisor.

Coleman met with the supervisor and was given a written warning for excessive talking during working hours. A heated discussion ensued, and Coleman left for home. As a result of the discussion, Coleman became upset and ill and did not return to work the next day. Neither he nor his wife called Repro to explain his absence. On the third day after the incident, Coleman's wife called at 10:00 a.m. to explain that he was still ill and would return to work on November 9. Shortly after the telephone call, Repro decided to discharge Coleman.

Coleman applied for unemployment compensation benefits, and a claims deputy determined he was discharged for misconduct. A referee affirmed, concluding that Coleman was discharged for failing to show up for work and failing to call his employer. At the hearing the vice president and foreman testified that Coleman had received two warnings in the past for failure to work his regular 40-hour weeks. However, the referee determined that the warnings were not relevant, because he had been discharged for his unexcused absence.

A Commissioner's representative affirmed, but concluded that Coleman had been discharged for several reasons:

> We are firmly convinced * * * that the claimant's refusals to accept written warnings, his repeating of proscribed conduct the next day after receiving a verbal warning, his absence without calling in on the following day (November 7), and his absence on November 8, 1984 with a late call in by his wife all evince a consistent pattern of deliberate violations or disregard of the standards of behavior which the employer had a right to expect of him, constituting misconduct * * *.

## ISSUES

1. Does the record support the determination of the Commissioner's representative that Coleman was discharged for misconduct?

2. Did the Commissioner's representative improperly amend the findings of the referee to include additional reasons justifying Coleman's discharge?

## ANALYSIS

An individual is disqualified from receiving unemployment compensation benefits if he is discharged for "misconduct * * * connected with his work or for misconduct which interferes with and adversely affects his employment". Minn.Stat. § 268.09, subd. 1(2) (1984). "Misconduct" is defined as follows:

> [T]he intended meaning of the term "misconduct" * * * is limited to conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest

equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as a result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct."

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973) (quoting *Boynton Cab. Co. v. Neubeck*, 237 Wis. 249, 259, 296 N.W. 636, 640 (1941)).

The findings of the Commissioner's representative must be viewed in the light most favorable to the decision and should not be disturbed if there is evidence reasonably tending to sustain them. *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983). There is evidence in the record to support the determination that Coleman received two previous warnings of deficient work hours, that he continued his excessive talking with other employees during working hours in disregard of a third warning, and that he had missed work without calling in to explain his absence.

Coleman argues that his termination was based solely upon his failure to notify his employer of his reason for being absent from work on November 7 and that the record does not support the Commissioner's conclusion that his past conduct contributed to his discharge. The referee determined that the 1983 warnings were irrelevant and that Coleman was discharged solely for his unreported absence. However, Repro's vice president testified that Coleman was fired because he had been given three warning letters. In addition, much of the hearing was devoted to discussion of Coleman's failure in the past to work his regular 40-hour weeks and the two resulting warnings written up in 1983. We find the record supports the conclusion of the Commissioner's representative that Coleman was discharged for misconduct consisting of (1) past failure to work a 40-hour week, resulting in two written warnings; (2) excessive talking on the job despite an oral warning, resulting in a third written warning; (3) failure to report his absence on November 7; and (4) failure to report his absence on November 8 until 10:00 a.m.

Coleman further argues that the Commissioner's representative improperly modified the referee's findings of fact based on two warning letters which had not been entered into evidence. Even though the written warnings were not actually received in evidence, testimony of the vice president and foreman supports the Commissioner's determination that Coleman received them. The Commissioner's representative has the authority to "affirm, modify, or set aside any finding of fact * * on the basis of the evidence previously submitted." Minn.Stat. § 268.10, subd. 5 (1984). The amended findings are supported by the evidence.

### DECISION

Coleman was discharged from his employment for misconduct. The decision of the Commissioner's representative is affirmed.

Affirmed.