**Jeffrey L. GUSTAFSON, Relator,**

v.

**IRC INDUSTRIES, Commissioner of Economic Security, Respondents.**

**No. C4–85–974.**

Court of Appeals of Minnesota.

Oct. 8, 1985.

John Boots Sigler, St. Paul, for relator.

IRC Industries, pro se.

Hubert H. Humphrey, III, Atty. Gen., Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for Commissioner of Economic Security.

Considered and decided by POPOVICH, C.J., and SEDGWICK and LANSING, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

Jeffrey Gustafson seeks review of a determination by the Commissioner of Economic Security that he was discharged by his employer for misconduct and was there-by disqualified from receiving unemployment compensation benefits. We affirm.

## FACTS

In October 1979, Jeffrey Gustafson was hired as a truck driver by IRC Industries, located in Red Wing, Minnesota. On March 20, 1984, Gustafson did not report to work for personal reasons and did not contact IRC until shortly before the end of his scheduled shift. The following day IRC's manager, Paul Rodewald, warned Gustafson that his unscheduled absence was irresponsible and that noncompliance with IRC's rules could result in his termination. Rodewald documented this oral warning to Gustafson in a written memorandum to Gustafson's personnel file on March 21, 1984.

On September 27, 1984, Gustafson was scheduled to make four assigned stops in the Twin Cities. After completing only two of the stops, he obtained permission to finish his route the next day and return to Red Wing in the morning. On the following day, one of the orders was not ready, and without calling IRC for further instructions, Gustafson returned to Red Wing more than an hour late without the order. Consequently, IRC was required to send Gustafson back to the Twin Cities later that day to pick up the order. On October 1, 1984, Rodewald discussed the incident with Gustafson, expressing his belief that the overnight stay in the Twin Cities had been preplanned. Rodewald warned Gustafson that he should have called and that if his personal activities continued to affect his work performance he would be dismissed. Rodewald also wrote the following letter to Gustafson:

While at Nature Best you had indicated to them that you were planning on staying in the Twin Cities overnight. If you were planning to stay, why didn't you call at that time?

\* \* \* \* \* \*

To further complicate the matter on Friday morning you did not return at 9:00 as previously indicated. You arrived at IRC at approximately 10:35 and

at that time indicated that you still had not picked up at Fabric Supply. Again why didn't you call from the Twin Cities and let us know what was happening?

\* \* \* \* \* \*

If, in the final analysis, you simply used poor judgment in not calling on Thursday and again on Friday, we still have a problem. This is the second time in six months that your personal activities have had a negative impact on your work schedule and/or the performance of your job. This will not be tolerated again in the future but will result in the termination of your employment.

Gustafson testified that he did not receive this letter.

The final incident which led to Gustafson's dismissal occurred on December 27, 1984. The night before, Gustafson was forced to stay overnight in a hotel in Wabasha because of bad weather. The alarm clock provided by the hotel had a defective alarm. He overslept, arriving at work three hours late, and did not call in advance to let his manager know. At the end of his shift on December 27, Gustafson was dismissed. In a letter explaining his reasons for dismissing Gustafson, Rodewald stated:

Jeff, this the *third* time in less than a year that "unusual" circumstances resulted in you either missing work or arriving late and in all cases you failed to keep us informed as to what was going on. As I indicated in my memo to you on 10/1/84, further incidents would result in disciplinary action.

Gustafson applied for unemployment compensation benefits, and a claims deputy determined that he had been discharged for misconduct. A department referee reversed, determining:

[Gustafson's] failure in good performance was a result of ordinary negligence in an isolated instance as demonstrated by the final incident or \* \* \* extraordinary circumstances [that] resulted in his failure to report for work on time. His actions did not demonstrate a willful or wanton disregard of his employer's interests \* \* \*.

IRC appealed, and a Commissioner's representative reversed, concluding that Gustafson's action constituted misconduct. The Commissioner's representative stated:

Contrary to the Referee's reasoning that [Gustafson] was discharged for poor work performance, which is not misconduct per se \* \* \*, it is apparent from the record that [Gustafson] was discharged on December 27, 1984, for his failure to call in and let the employer know the situation when he knew that he was going to be tardy, after being warned on October 1, 1984, that he would be discharged for another such failure \* \* \*.

## ISSUE

Does the record support the Commissioner's determination that Gustafson was discharged for misconduct and was therefore ineligible for unemployment compensation benefits?

## ANALYSIS

Our review of the Commissioner's findings is limited to determining whether there is sufficient evidence in the record to support those findings. *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983). Gustafson argues that, contrary to the findings of the Commissioner's representative, he did not receive a formal written warning that continuance of any specific behavior would result in his discharge.

There is evidence in the record which not only supports the determination that Gustafson received a written warning dated October 1, but that, in addition, he had received two oral warnings to the same effect. This record supports the determination of the Commissioner's representative that Gustafson knew he should have notified IRC when he was going to be late on December 27 and that he was discharged for repeatedly failing to notify IRC when he was going to be absent or late.

Gustafson argues that this case should be distinguished from *Flahave v. Lang*

*Meat Packing,* 343 N.W.2d 683 (Minn.Ct. App.1984), because he received no notice that his failure to call IRC on December 27, 1984 would result in his discharge and because he did not intentionally harm his employer's interests. Because we uphold the Commissioner's determination that Gustafson received two prior warnings that he should call IRC when absent or late, we do not find Gustafson's argument persuasive. Here, as in *Flahave,* the misconduct consisted of repeated failures to notify an employer of expected absences or tardiness, evidencing a "willful or wanton disregard for the employer's interests * * * or a lack of concern by the employee for his job." *Flahave,* 343 N.W.2d at 686, quoting *Ideker v. LaCresent Nursing Center, Inc.,* 296 Minn. 240, 241, 207 N.W.2d 713, 714 (1973).

## DECISION

The Commissioner properly determined that relator was discharged for misconduct under Minn.Stat. § 268.09, subd. 1(2) (1984), when he repeatedly failed to notify his employer of expected absences or tardiness.

Affirmed.