Michael **BARSTOW**, Relator,

v.

**HONEYWELL, INC., Department of Jobs and Training, Respondents.**

No. CO–86–1193.

Court of Appeals of Minnesota.

Dec. 2, 1986.

William Stockman, Stockman, Sullivan & Sadowski, Coon Rapids, for Barstow.

Robert J. Mabel, Minneapolis, for Honeywell.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Spec. Asst. Atty. Gen., St. Paul, for Dept. of Jobs and Training.

Heard, considered, and decided by LESLIE, P.J., and FOLEY and RANDALL, JJ.

## OPINION

LESLIE, Judge.

Relator Michael Barstow appeals by writ of certiorari from a determination that he was discharged for misconduct. We affirm.

## FACTS

Michael Barstow had worked for several years as an inspector in Honeywell's Defense Systems Division when he was discharged on February 26, 1985 for misconduct.

Honeywell categorizes different types of unsatisfactory employee behavior as first, second, third, or fourth degree offenses.

Demerits are meted out according to the severity of an offense, ranging from warning slips for first degree offenses to layoffs or discharge for fourth degree offenses. Demerits are cumulative; for example, two second degree demerits are the equivalent of one fourth degree demerit.

On September 26, 1985, Barstow received a first degree demerit for leaving work without punching out. In early November 1985, he received another demerit for several instances of unexcused tardiness. When combined, the two demerits resulted in a second degree demerit, effective until May 1986.

Upon two occasions in February 1986, Barstow was verbally warned about additional absences from work, but he did not receive demerits for those absences.

As an inspector, Barstow was responsible for performing "weld checks". To make these checks, parts with defective welds are run through a machine to make sure the machine has been accurately detecting defects. Honeywell regards these checks as "critical" and "mandatory", and if the machine does not detect the known defective welds, all parts produced since the last check must be rejected. On February 24, 1986, Barstow neglected to perform a weld check, and as a consequence, he received another second degree demerit.

Finally, on February 26, 1986, a supervisor observed Barstow out of his work area more than once, and also noticed him engaging in extended nonwork-related conversation with another employee. That day, Barstow's work record was reviewed, and he was discharged.

Barstow applied for unemployment compensation, and a claims deputy determined that he was discharged for misconduct. Upon appeal, a department referee and, subsequently, a Commissioner's representative, upheld that decision. Barstow has appealed.

## ISSUE

Did Barstow's overall course of behavior constitute misconduct sufficient to disquali-

fy him from the receipt of unemployment compensation benefits?

## ANALYSIS

■ The Commissioner's representative based his decision upon Barstow's overall work record, reasoning:

> We agree with the contention that [Barstow's] "forgetting" to perform the weld check does not in and of itself constitute misconduct. However, [Barstow's] overall pattern of conduct evinced a disregard for [Honeywell's] interests.

This decision is supported by the law and the evidence. First, an isolated instance of negligence is generally insufficient to disqualify an individual from the receipt of unemployment compensation benefits:

> [M]ere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct".

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 375, 204 N.W.2d 644, 646 (1973). Thus, by itself, Barstow's failure to perform the weld check would be excluded from the definition of misconduct.

Barstow claims that he was discharged solely because of his failure to perform the weld check, and not because of his other actions. The Commissioner's representative, however, found that Honeywell "took into account [Barstow's] overall attendance record". This finding is supported by the record, and therefore must be upheld. *Woodward v. Interstate Office Systems*, 379 N.W.2d 177, 179 (Minn.Ct.App.1985).

■ Barstow argues that the Commissioner's representative improperly aggregated the various incidents of his misbehavior, since those incidents were unrelated to one another. In *Flahave v. Lang Meat Packing*, 343 N.W.2d 683 (Minn.Ct.App. 1984), however, this court adopted the "last straw doctrine" enunciated in the Michigan case of *Giddens v. Appeal Board of Michigan Employment Security Commission*, 4 Mich.App. 526, 145 N.W.2d 294 (1966). The *Giddens* court explained that doctrine as follows:

> We find no mandate that the incident ultimately resulting in discharge must be closely allied in time or tenor. There is no requirement they all be of the same nature or the same type of infraction of rules. Indeed, if we were to sum up the latitude to be permitted an employer in dealing with a recalcitrant employee who has consistently demonstrated disregard for the employer's interests, we might call it a "last straw" doctrine in which the final infraction, though unrelated to previous infractions, is of such a nature that it demonstrates conclusively the employee's utter disregard for the employer's interests.

*Id.* at 298. This court has also adopted the *Giddens* court's premise that behavior unrelated in time or tenor may, as a whole, support a determination of misconduct under the last straw doctrine. *See Drellack v. Inter-County Community Council, Inc.*, 366 N.W.2d 671, 674 (Minn.Ct.App. 1985). *See also Coleman v. Repro Printing, Inc.*, 374 N.W.2d 218 (Minn.Ct.App. 1985); *Campbell v. Minneapolis Star & Tribune Co.*, 345 N.W.2d 803 (Minn.Ct. App.1984).

Barstow also argues that the evidence did not prove he was out of his work area or wasting time on his last day of work. The Commissioner's representative chose to believe Honeywell's testimony to the contrary, and this determination regarding credibility should be left to the representative. *Cary v. Custom Coach, Inc.*, 349 N.W.2d 331, 332 (Minn.Ct.App.1984).

■ Finally, Barstow argues that Honeywell failed to prove his conduct was deliberate. The *Tilseth* definition of misconduct, however, does not require deliberate conduct, but also encompasses "carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employ-

er." *Tilseth*, 295 Minn. at 375, 204 N.W.2d at 646.

## DECISION

The Commissioner's representative properly determined that Barstow's course of behavior amounted to misconduct under the unemployment compensation laws.

Affirmed.