Meshack O. MONYORO, Relator,

v.

MARRIOTT CORPORATION, and Commissioner of Jobs and Training, Respondents.

No. C9–86–1886.

Court of Appeals of Minnesota.

April 7, 1987.

D. Scott Klemp, St. Paul, for Meshack O. Monyoro.

Julienne Bramesco, Washington, D.C., for Marriott Corp.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Commissioner of Jobs and Training.

Heard, considered and decided by FORSBERG, P.J., and RANDALL and STONE,* JJ.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

## OPINION

STONE, Judge.

Relator Meshack Monyoro appeals from a determination by the Commissioner of Jobs and Training that a series of violations of his employer's rules and directions, when added together, constituted misconduct. We affirm.

## FACTS

After working for seven years as a food transportation helper for the Marriott Corporation, an airline catering company, Meshack Monyoro was discharged for several instances of conduct which Marriott viewed as detrimental to its interests.

Monyoro's duties involved loading trucks with food and beverages at Marriott's place of business, going to the airport, using hand signals to help the truck drivers approach airplanes, and helping to load or unload food and beverages from the airplanes.

On April 16, 1985, Monyoro received an oral warning because he had failed to properly dispose of some liquor bottles which he had been responsible for removing from a plane. Shortly before he had begun stripping the plane, he had been reminded to properly dispose of the liquor.

On June 1, 1985, Monyoro received another oral warning after he failed to report on time for his shift and neglected to call Marriott until 90 minutes after the shift was scheduled to begin, in violation of Marriott's call-in policy.

On June 22, 1985, Monyoro received a third oral warning because he reported for work out of uniform, wearing corduroy pants and a sweatshirt.

On September 19, 1985, Monyoro received a written warning for insubordination. Marriott claimed that several days earlier, when Monyoro had been instructed by a supervisor to go home 30 minutes before his shift ended, he had refused to comply with the supervisor's order.

On December 21, 1985, Monyoro was issued a second written warning when he failed to finish loading 10 entrees on a plane. According to Marriott, the flight could have been delayed if a supervisor had not discovered the error.

On February 16, 1986, after a safety manager observed Monyoro making an inadequate arm gesture to a truck driver he was signaling at the airport, Monyoro received a three-day suspension and was informed that he would be required to undergo retraining.

Two days earlier, on February 14, Marriott had posted a notice on a bulletin board advising the employees in Monyoro's department that there would be a mandatory meeting on February 21, 1986 at 12:30 p.m. Monyoro saw the notice, but while he was on suspension he forgot the time of the meeting. He did not call in, however, until shortly before the meeting began and, as a result, he missed much of the meeting. He received another verbal warning for failing to attend that meeting.

On February 21, 1986, another notice was posted regarding a make-up meeting on February 28, 1986 for employees who had missed the February 21 meeting. A list of those employees required to attend was attached to the notice, and Monyoro's name was fifth on the list. Nevertheless, Monyoro did not attend the make-up meeting on February 28, and that day he was discharged.

Monyoro applied for unemployment compensation; the claims deputy determined he was discharged for misconduct; the referee, after a hearing, found him to have been discharged for reasons other than misconduct; upon review the Commissioner's representative determined that he was discharged for misconduct disqualifying him from unemployment compensation benefits, from which determination Monyoro appealed.

At the referee's hearing Monyoro offered testimony disputing Marriott's claim that he had engaged in misconduct. Regarding his failure to attend the make-up meeting on February 28, Monyoro claimed

he had not "missed" the February 21 meeting, but had attended the last 35 minutes of that meeting. He therefore assumed that the notice of the February 28 make-up meeting did not apply to him.

Monyoro's testimony and claims may be summarized:

Regarding the February 21 meeting, Monyoro claimed he had inadvertently forgotten the time, but had arrived approximately 35 minutes before the end of that meeting.

Regarding the February 16 incident, Monyoro disputed Marriott's claim that he had given an improper hand signal to the truck driver.

Regarding the December 21 incident, Monyoro testified that Marriott's drivers, not helpers, were responsible for checking whether all entrees were on a flight, and that it was not his fault some entrees had not been loaded. He also testified that the aircraft was new and unfamiliar to him.

Regarding his alleged insubordination on September 19, Monyoro testified that he had never received an order to leave his shift 30 minutes early.

Regarding the June 22 incident when he reported to work out of uniform, Monyoro explained that he had mistakenly believed he had a uniform in his locker at work.

Regarding his absence from his shift and failure to call until after the shift began on June 1, Monyoro offered the excuse that he had overslept.

Regarding his failure to properly dispose of the liquor bottles on April 16, Monyoro testified that he did not remember the incident at all.

## ISSUE

Did Monyoro's behavior constitute misconduct sufficient to disqualify him from the receipt of unemployment compensation benefits?

## ANALYSIS

"Misconduct" disqualifying an employee from receiving unemployment benefits has been defined as follows:

[T]he intended meaning of the term "misconduct" * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct".

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973). As Monyoro points out in his brief, the supreme court has also characterized misconduct as "conduct demonstrating a lack of concern by the employee for her job." *Feia v. St. Cloud State College*, 309 Minn. 564, 565, 244 N.W.2d 635, 636 (1976).

A referee from the Department of Jobs and Training found that Monyoro had not engaged in misconduct, reasoning that his failure to attend the February 28 meeting constituted a good faith error in judgment and/or ordinary negligence, and that his other violations of company policy should be "categorized as inadvertencies or isolated instances of ordinary negligence", rather than acts of wilful misconduct. The Commissioner's representative disagreed, however, and reversed the referee, concluding that Monyoro's overall employment record demonstrated a lack of concern for his job.

It is the decision of the Commissioner's representative which must be reviewed, rather than that of the referee. *Winkler v. Park Refuse Service Inc.*, 361 N.W.2d 120, 123 (Minn.Ct.App.1985). We must af-

firm the representative's findings of fact if there is evidence in the record which reasonably tends to sustain them; however, conclusions of law are not binding if they are not reasonably supported by the findings. *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983); *Zepp v. Arthur Treacher Fish & Chips, Inc.*, 272 N.W.2d 262, 263 (Minn.1978). Once the facts are established, the question whether or not the employee's behavior constituted misconduct is one of law, to be independently determined by this court. *McKee v. Cub Foods, Inc.*, 380 N.W.2d 233, 236 (Minn.Ct.App.1986).

Monyoro claims that the several incidents of misbehavior were isolated and unrelated, and that the Commissioner's representative therefore erred by characterizing them as a "series" of behavior demonstrating a lack of concern for his job. In *Barstow v. Honeywell, Inc.*, 396 N.W.2d 714 (Minn.Ct.App.1986), this court addressed a similar argument by an employee, and concluded that several instances of behavior "unrelated in time or tenor may, as a whole, support a determination of misconduct under the last straw doctrine". *Id.* at 716 (citing *Giddens v. Appeal Board of Michigan Employment Security Commission*, 4 Mich.App. 526, 145 N.W.2d 294 (1966)). *Giddens* described the "last straw" doctrine as a situation "in which the final infraction, though unrelated to previous infractions, is of such a nature that it demonstrates conclusively the employee's utter disregard of the employer's interests." *Id.* 145 N.W.2d at 298.

Monyoro also claims that each of the incidents leading to his discharge was either inadvertent, inefficient, or at the most, negligent. If true, such behavior would be expressly excluded from the *Tilseth* definition of misconduct:

> On the other hand, mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct'.

*Tilseth*, 295 Minn. at 375, 204 N.W.2d at 646.

Nevertheless, we agree with the determination of the Commissioner's representative that Monyoro's overall behavior demonstrated a lack of concern for his job and that the final incident in February was the "last straw" evidencing Monyoro's disregard of Marriott's interests. Upon eight occasions within a period of ten months, Monyoro violated his employer's rules. As a result, he received four verbal warnings, two written warnings and a three-day suspension. Even while he was on suspension, he failed to demonstrate sufficient concern for Marriott's interests to call in at a reasonable time to determine when the February 21 meeting was scheduled to start. And finally, although Monyoro had missed most of the February 21 meeting, he did not bother to read the notice posted that same day regarding a make-up meeting.

Monyoro claims he did not believe he had "missed" the February 21 meeting because he had attended the last 35 minutes. The Commissioner's representative, however, found that Monyoro attended only the last 10 minutes of the meeting and could not have reasonably believed that he had not missed the meeting. This finding, as well as each of the other factual findings of the Commissioner's representative, finds reasonable support in the record.

While individually the incidents might appear to be minor infractions of Marriott's rules, when considered as a whole they cannot be considered mere negligence or inadvertence but, at a minimum, demonstrate not only a lack of concern for the job but also that type of "intentional and substantial disregard of the employer's interests" encompassed by the *Tilseth* definition of misconduct.

## DECISION

The Commissioner's representative properly determined that Monyoro was disqualified from receiving unemployment compensation benefits as a result of his numer-

ous violations of Marriott's rules and directions.

Affirmed.