Rodney **CAVALIER**, Relator,

v.

C. MACHINE CO., INC., Commissioner of Jobs and Training, Respondents.

No. C6–86–1876.

Court of Appeals of Minnesota.

April 28, 1987.

William L. Stockman, Stockman, Sullivan & Sadowski, Coon Rapids, for Rodney Cavalier.

Richard A. Merrill, Barna, Guzy, Merrill, Hynes & Giancola, Ltd., Columbia Heights, for C. Machine Co., Inc.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, Sp. Asst. Atty. Gen., St. Paul, for Commissioner of Jobs and Training.

Heard, considered and decided by FORSBERG, P.J., and RANDALL and STONE*, JJ.

## OPINION

FORSBERG, Judge.

Relator Rodney Cavalier appeals from a determination that he was discharged from his job for a continuing pattern of misconduct. We affirm.

## FACTS

Rodney Cavalier began working for the respondent C. Machine Co., Inc. as a machinist in February 1981. C. Machine owns a computer, and shop manager Craig Dickison encouraged Cavalier to enroll in a computer course. In April 1986, when Cavalier began a six-week computer course at a vocational technical institute, Dickison told him that upon completion of the course, C. Machine would reimburse him for his tuition.

Although Cavalier's scheduled lunch break was from noon until 12:30, on May 13 he used C. Machine's computer from noon until 1:15 p.m. to do some homework for his class. When Dickison observed Cavalier using the computer at 1:15, he told Cavalier that he would be happy to help him with his work, but that Cavalier should do his homework on his own time, should not use the computer during working hours, and should ask permission before using the computer.

The next day, without first obtaining permission, Cavalier again used the computer to do his homework during his lunch break. A few hours later, he became worried that he might have lost some of his homework, so he used the computer again without permission for a brief period during his scheduled work time to determine whether his homework was in the computer.

When Dickison returned later in the afternoon, a co-worker told him that Cavalier had been using the computer. Dickison questioned Cavalier, who initially denied using the computer at all, but then, after

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

repeated questioning, admitted to using the computer "for a little bit"; "just a minute"; "maybe five minutes"; and finally "well maybe 15 minutes."

Dickison left his work area and returned 20 minutes later with a written warning, which he requested Cavalier to read and sign. Cavalier refused to sign the warning, stating: "F*** you. Stick it up your a**, Whiskey Breath." Dickison thereupon informed Cavalier that he was discharged.

Cavalier's application for unemployment compensation was denied by a claims deputy, who determined that Cavalier had been discharged for misconduct. Cavalier appealed to a Department referee who, after taking testimony from both parties, reversed the claims deputy's denial of benefits. The referee found that Dickison believed he could use the computer on his own time, and concluded that one swearing incident should not be characterized as misconduct.

C. Machine appealed to a Commissioner's representative, who made two changes in the referee's findings. First, the representative found that on May 13 Dickison told Cavalier he should ask permission before using the computer. The referee had merely found that Dickison told Cavalier he should come and ask him "if he needed help."

Second, the referee and the Commissioner's representative disagreed on the exact words Cavalier uttered during his final conversation with Dickison. Based in part on these different findings, the representative reversed the referee's decision, and concluded that Cavalier's actions constituted misconduct.

## ISSUE

Did Cavalier engage in misconduct disqualifying him from the receipt of unemployment compensation benefits?

## ANALYSIS

An employee is disqualified from receiving unemployment benefits if he has engaged in misconduct. Minn.Stat. § 268.09,

subd. 1(2) (1986). "Misconduct" is defined as follows:

[T]he intended meaning of the term 'misconduct' * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct.'

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973).

This court's scope of review is limited to determining whether there is evidence in the record which reasonably tends to sustain the representative's findings of fact. *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983). It is the decision of the Commissioner's representative, rather than that of the referee, which must be reviewed. *Winkler v. Park Refuse Service Inc.*, 361 N.W.2d 120, 123 (Minn.Ct.App.1985). Once the facts have been established, the question whether or not the employee's behavior constituted misconduct is one of law which may be independently reviewed by this court. *McKee v. Cub Foods, Inc.*, 380 N.W.2d 233, 236 (Minn.Ct.App.1986). Conclusions of law are not binding if they are not reasonably supported by the representative's findings. *Zepp v. Arthur Treacher Fish & Chips, Inc.*, 272 N.W.2d 262, 263 (Minn. 1978).

■ The record in this case supports those findings of the Commissioner's representative which differ from the findings of the referee. Dickison's testimony supports the representative's finding regarding the

profanity used by Cavalier, and Dickison also testified that he told Cavalier on May 13 to ask permission before using the computer.

■ Cavalier argues that the representative erred by concluding that the May 13 use of the computer was part of a "continuing pattern of misconduct." The representative found:

> We observe that there was a continuing pattern of misconduct by the claimant commencing on May 13, 1986 and concluding on May 14, 1986 with his discharge.

We agree that the record contains no evidence in support of the representative's conclusion that Cavalier engaged in misconduct on May 13. However, the representative also determined that the several incidents on May 14 contributed to Cavalier's discharge, and that the last incident on May 14 involving Cavalier's use of obscene language was a "last straw," sufficient to disqualify Cavalier from the receipt of unemployment compensation benefits.

■ We first recognized the "last straw doctrine" in *Flahave v. Lang Meat Packing*, 343 N.W.2d 683 (Minn.Ct.App.1984). *Flahave* held that an employee's "repeated infractions of his employer's work rule demonstrate his substantial disregard of his employer's interest and of the duties and obligations that he owed to his employer." *Id.* at 687. The infractions in that case involved four incidents where the employee failed to report to work and also failed to notify his employer. Subsequent decisions applying this doctrine include *Barstow v. Honeywell, Inc.*, 396 N.W.2d 714 (Minn.Ct.App.1986); *Woodward v. Interstate Office Systems*, 379 N.W.2d 177 (Minn.Ct.App.1985); *Coleman v. Repro Printing, Inc.*, 374 N.W.2d 218 (Minn.Ct.App.1985); *Drellack v. Inter-County Community Council*, 366 N.W.2d 671 (Minn.Ct.App.1985); *Campbell v. Minneapolis Star & Tribune Co.*, 345 N.W.2d 803 (Minn.Ct.App.1984); and *Blau v. Masters Restaurant Associates, Inc.*, 345 N.W.2d 791 (Minn.Ct.App.1984). Here, the series of conduct on May 14 which led up to the last incident included Cavalier's use of the computer twice without obtaining permission, his lies to Dickison about it before he finally admitted the truth, and his refusal to read and acknowledge the warning notice which Dickison attempted to hand him.

Cavalier cites *Windsperger v. Broadway Liquor Outlet*, 346 N.W.2d 142 (Minn.1984) for his claim that his conduct on May 14 constituted a "single hotheaded incident." In *Windsperger*, the court stated that "an isolated hotheaded incident which does not interfere with the employer's business is not misconduct * * * justifying a denial of unemployment compensation benefits." *Id.* at 145. While, by itself, we might have characterized Cavalier's language as a single hotheaded incident, in fact that language was the last incident in a series of conduct evidencing a disregard for the employer's interests. We therefore uphold the representative's finding that Cavalier's language constituted a "last straw," rather than a single hotheaded incident.

### DECISION

The record supports the Commissioner's determination that Cavalier's actions constituted misconduct.

Affirmed.