Michele A. BIBEAU, Relator,

v.

RESISTANCE TECHNOLOGY, INC., Commissioner of Jobs and Training, Respondents.

No. C9-87-702.

Court of Appeals of Minnesota.

Sept. 1, 1987.

James T. Hansing, Minneapolis, for relator.

Lisa M. Hurwitz, Doherty, Rumble & Butler, Minneapolis, Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for respondents.

Heard, considered and decided by POPOVICH, C.J., and NORTON and MULALLY*, JJ.

## OPINION

MULALLY, Judge.

Relator Michele Bibeau appeals from a determination by a Commissioner's representative that her failure to perform quality assurance checks of the employer's product over a period of three days constituted misconduct.

## FACTS

Relator Michele Bibeau worked for the respondent Resistance Technology, Inc. (RTI) as an assembler of hearing aids from September 1981 until November 26, 1986. On November 14, 1986, RTI initiated a new quality control program, which required that Bibeau and other assemblers make periodic quality checks on their work and record the results of those checks. The first training session for the assemblers was held on Friday, November 14. At that session, the program was explained and the assemblers practiced performing the quality checks. The assemblers were informed that for the first three days of the program, RTI's regular quality assurance (Q.A.) inspectors would also be making the checks.

The program began on Tuesday, November 18, and on that day Bibeau received additional training regarding the quality checks.

Bibeau did not record results of quality checks on Wednesday, Thursday, or Friday, and on Friday her supervisor wrote a memo, which stated, in part:

On Wednesday I asked the operators if quality checks were being performed and Shelly B. [Michele Bibeau] said "No." I told her to make them, it was part of her job now. She complained saying that Jan Brihn, an inspector, can make the checks so that we can build parts—it takes too much time.

On Friday * * * I received a copy of a memo from Ed Codner to Jim Wood. The fact that the quality checks were not being made is documented in the memo along with some sarcastic answers Shelly B. gave to questions Ed asked.

\* \* \* \* \* \*

I went to Shelly B. and asked if I could see her inspection log. She said "Jan has it," so I went to Jan—she did not have the log I wanted. I went back to Shelly and asked her, again, where the log was and she said, "In the box" (behind her). I found the log. It had only the three quality checks from Tuesday on it. * * * I asked her why she was not making the quality checks and she gave the same reason she had complained about on Wednesday—let Jan do it. She said she did not know she was supposed to make the checks (*did not know* after reading the process, talking to her in the training session and in discussions since then).

Upon receiving this memo, Dennis Gonsior, the production manager, suspended Bibeau pending an investigation. He met with Bibeau on Tuesday, November 25, 1986 and asked her if she was not aware of the Quality Program going on at RTI. Bibeau replied: "I thought it was stupid because Q.A. was doing it every hour." Bibeau was discharged on November 26 for insubordination.

---

\* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

Bibeau applied for unemployment compensation, but her claim was denied on the basis that she had engaged in misconduct. Bibeau appealed, and following a hearing, a department referee reversed the claims deputy's decision, determining that Bibeau had worked to the best of her ability, but that RTI had simply become aggravated and discharged her.

RTI appealed to a Commissioner's representative, who reversed the referee's determination, finding that the referee's conclusion was simply not supported by the evidence. The Commissioner's representative stated:

> The claimant was told about the new Quality Check Program; she was trained in how to perform it; and she deliberately chose not to obey the employer's specific instructions because she thought it was "stupid" of the employer to have her check the quality of her work product when the Q.A. inspectors were also checking it. The employer clearly had a right to require the claimant to check her work and to issue an order to her in that regard. The employer even had a right to issue what the employee considered to be a "stupid" order.

The representative concluded that Bibeau engaged in misconduct. Bibeau has appealed.

## ISSUE

Does the record support the determination of the Commissioner's representative that Bibeau engaged in misconduct disqualifying her from the receipt of unemployment compensation benefits?

## ANALYSIS

The scope of this court's review of factual questions is limited to determining whether the Commissioner's findings are reasonably supported by the evidence. *Group Health Plan, Inc. v. Lopez*, 341 N.W.2d 294, 296 (Minn.Ct.App.1983). This court is not privileged to reweigh the evidence to determine where the preponderance lies. *Nyberg v. R.N. Cardozo & Brother, Inc.*, 243 Minn. 361, 364, 67 N.W.2d 821, 823 (1954). The findings of the Commissioner, and not those of the referee, are to be reviewed by this court. *Winkler v. Park Refuse Service, Inc.*, 361 N.W.2d 120, 123 (Minn.Ct.App.1985).

With respect to questions of law, this court is free to exercise its independent judgment. *Forsberg v. Depth of Field/Fabrics*, 347 N.W.2d 284, 286 (Minn. Ct.App.1984). The question whether an employee has engaged in misconduct disqualifying him from the receipt of unemployment compensation benefits involves questions of both fact and law. *Colburn v. Pine Portage Madden Brothers, Inc.*, 346 N.W.2d 159 (Minn.1984).

"Misconduct" has been defined as follows:

> [T]he intended meaning of the term "misconduct" * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct."

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973). Here, the record amply supports the Commissioner's conclusion that Bibeau's conduct meets the above definition of misconduct.

Bibeau argues that she was given only one warning, on Friday, November 21, concerning her unsatisfactory conduct, and was suspended before she had any opportunity to conform to her employer's instructions. This argument fails to take into account the fact that Bibeau was told on Friday, November 14 and Tuesday, Novem-

ber 18, that she was to make the quality checks and record the results. Bibeau's argument also ignores the documents in the record which indicate that she deliberately chose not to obey her employer's instructions because she thought the new quality assurance program was "stupid."

Bibeau cites *Barstow v. Honeywell, Inc.,* 396 N.W.2d 714 (Minn.Ct.App.1986) for the proposition that an isolated instance of unsatisfactory conduct should not be characterized as misconduct. In *Barstow,* an employee had neglected to perform a weld check, and this court indicated that such isolated instance of negligence would not support a determination that the employee had engaged in misconduct. Here the Commissioner's representative found that Bibeau did not neglect to perform her responsibilities; rather, she intentionally refused to perform them. Further, while the employee in *Barstow* had neglected to perform only one weld check, Bibeau refused to perform her quality assurance checks over the course of three days: Wednesday, November 19 through Friday, November 21.

Bibeau's contention that the Commissioner's findings are improperly based on testimony that contained hearsay is without merit. This court has indicated that in unemployment hearings hearsay may properly be admitted. *See, e.g., Youa True Vang v. A–1 Maintenance Service,* 376 N.W.2d 479 (Minn.Ct.App.1985).

### DECISION

The evidence reasonably supports the Commissioner's determination that Bibeau engaged in misconduct disqualifying her from the receipt of unemployment compensation benefits.

Affirmed.