**Janelle M. REDDMANN, Respondent,**

v.

**KOKESCH TRUCKING, INC., Relator,**

**Commissioner of Jobs and Training, Respondent.**

**No. CI–87–919.**

Court of Appeals of Minnesota.

Sept. 29, 1987.

Janelle M. Reddmann, pro se.

Terrence E. Conkel, Glencoe, for relator.

Hubert H. Humphrey, III, Atty. Gen., Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by POPOVICH, C.J., and NORTON and LOMMEN,* JJ., with oral argument waived.

## OPINION

A. PAUL LOMMEN, Judge.

Relator Kokesch Trucking, Inc. ("Kokesch") seeks review of a determination that respondent Janelle Reddmann is entitled to receive unemployment compensation benefits. We affirm.

## FACTS

Janelle Reddmann began working for Kokesch in April 1986 as an over-the-road truck dispatcher and salesperson. During the first four months of her employment, Reddmann was tardy on five occasions, left work early on eleven occasions, and failed to report for work or call in on two consecutive days when she was out of state attending a funeral. At the time of Reddmann's employment, Kokesch did not have a call-in policy or a published rule regarding employees' absences and tardiness.

At a meeting on August 29, Kokesch informed Reddmann that her tardiness and absences were having an adverse impact upon her work and Kokesch's business. Kokesch advised Reddmann that she was in danger of being discharged, and suggested she see a psychiatrist.

On Monday, September 8, Reddmann was absent from work during the afternoon, due to an appointment with a psychiatrist. She had notified Kokesch of this appointment the previous Friday, September 5. In addition, on Tuesday, September 9, Reddmann called in before the start of her shift to notify Kokesch that she would be absent that day, due to laryngitis. The next day, Wednesday, September 10, Reddmann was discharged because of the two absences on September 8 and 9 following her warning on August 29.

Reddmann applied for unemployment compensation, and a hearing was held by a referee from the Department of Jobs and Training to determine her entitlement to benefits. At the hearing, Reddmann testified Kokesch paid her a straight salary, expected her to work only 40 hours a week, and did not compensate her for overtime hours worked. She explained that she had worked extra hours on Saturdays, occasionally worked through her lunch hours, and remained available after hours if Kokesch's drivers had problems; thus, she believed she balanced out her tardiness and absences.

Following the hearing, the referee allowed Reddmann's claim for benefits, concluding that she had not been discharged for misconduct. Kokesch appealed to a Commissioner's representative, who affirmed the referee's findings and conclusions, stating:

> These two absences [of September 8 and 9] are clearly not incidents of misconduct within the criteria set forth for misconduct in the *Tilseth* case and the law because they lack culpability and did not demonstrate conclusively the claimant's utter disregard for the employer's interests.

Kokesch now appeals from the Commissioner's decision.

## ISSUES

1. Are the Commissioner's findings supported by the evidence in the record?

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

2. Did the Commissioner properly determine Reddmann's last two absences were not the "last straw," disqualifying her from the receipt of unemployment compensation benefits?

## ANALYSIS

### 1. *Findings*

■ The Commissioner found Reddmann notified Kokesch in advance she would be at the psychiatrist on Monday, and called in before work on Tuesday to explain she had laryngitis. Kokesch challenges these findings, claiming instead Reddmann was gone part of the day on Friday, September 5, left at noon on Monday without explanation, was gone on Tuesday due to laryngitis, and also came in late on Wednesday, September 10. The Commissioner chose to believe Reddmann's testimony rather than Kokesch's, and it is not the function of this court to second-guess the factfinder's determinations or reweigh the evidence where the findings are supported by the record. *Nyberg v. R.N. Cardozo & Brother, Inc.,* 243 Minn. 361, 364, 67 N.W.2d 821, 823 (1954).

### 2. *Last straw doctrine*

■ Minn.Stat. § 268.09, subd. 1(2) (1986) provides an employee who is discharged for misconduct is not entitled to receive unemployment compensation benefits. The employer has the burden of proving misconduct by the greater weight of the evidence. *Lumpkin v. North Central Airlines, Inc.,* 296 Minn. 456, 459, 209 N.W.2d 397, 400 (1973). The question whether the facts support a determination of misconduct is one of law, to be independently reviewed by this court. *Dean v. Allied Aviation Fueling Co.,* 381 N.W.2d 80, 83 (Minn.Ct.App.1986).

Several incidents, when added together, may demonstrate the culpability necessary for a determination of misconduct. In *Flahave v. Lang Meat Packing,* 343 N.W.2d 683 (Minn.Ct.App.1984), this court adopted the "last straw" doctrine enunciated in *Giddens v. Appeal Board of Michigan Employment Security Commission,* 4 Mich.App. 526, 145 N.W.2d 294, 298 (1966):

We find no mandate that the incident ultimately resulting in discharge must be closely allied in time or tenor. There is no requirement they all be of the same nature or the same type of infraction of rules. Indeed, if we were to sum up the latitude to be permitted an employer in dealing with a recalcitrant employee who has consistently demonstrated disregard for the employer's interests, we might call it a "last straw" doctrine *in which the final infraction, although unrelated to previous infractions, is of such a nature that it demonstrates conclusively the employee's utter disregard for the employer's interests.*

*Id.* (emphasis supplied); *see Flahave,* 343 N.W.2d at 686–87.

■ In the present case, Kokesch argues the Commissioner erred by relying upon a determination Reddmann's last two absences did not "demonstrate conclusively [her] utter disregard for the employer's interests." This is the same standard cited by *Giddens* and adopted by *Flahave;* therefore, the Commissioner properly recognized if Reddmann's last instance of behavior were to be considered a last straw, that behavior should have "demonstrated conclusively her utter disregard for Kokesch's interests."

Here, we agree with the Commissioner's conclusion Reddmann's final absences did not demonstrate conclusively her utter disregard for Kokesch's business. Although Reddmann was tardy or left early on many occasions, there was no call-in policy or published rule regarding tardiness or absences, and she also worked extra hours. She was informed only once her schedule was unsatisfactory, and after that, she went to see a psychiatrist upon Kokesch's recommendation and after notifying Kokesch in advance, and was absent one day due to illness. These facts support the Commissioner's determination Reddmann's last two absences were justified and did not demonstrate a disregard of the employer's business. *See Deering v. Unitog Rental Services,* 381 N.W.2d 486 (Minn.Ct.App. 1986) (employee's violation of an employer's rule after receiving a final warning did

not constitute misconduct because the employee's conduct was excused.)

Kokesch cites *Jones v. Rosemount, Inc.,* 361 N.W.2d 118 (Minn.Ct.App.1985), where we stated:

> Although there was no showing that Jones' absenteeism was wilful or deliberate, it was sufficiently chronic and excessive to demonstrate a lack of concern by Jones for her job. The Commissioner placed heavy importance on the reason for which Jones missed her last day of work and, finding that absence to have been for reasons outside of Jones' control, held her termination to be for reasons other than misconduct.
>
> Regardless of the reason for her absence on her last day of work, Jones' pattern of persistent absence demonstrated negligent behavior toward her employer, justifying termination and justifying withholding unemployment compensation benefits.

*Id.* at 120. We find *Jones* distinguishable on its facts, since there the employee did not take advantage of an opportunity to make up missed hours of work, whereas here there is evidence Reddmann did in fact work extra hours. Further, in *Jones,* the employer had a definite policy regarding absenteeism, which the employee violated; here, on the other hand, Kokesch had no such policy.

## DECISION

The Commissioner properly declined to characterize Reddmann's final absences as the last straw disqualifying her from the receipt of unemployment compensation benefits.

Affirmed.