Sandra **DRELLACK**, Relator,

v.

**INTER–COUNTY COMMUNITY COUN-CIL, INC., Department of Economic Security, Respondents.**

No. C7–84–2157.

Court of Appeals of Minnesota.

April 30, 1985.

Karla R. Wahl, Minneapolis, for relator.

Edward H. Rasmussen, Bagley, for Inter-County Community Council, Inc.

Hubert H. Humphrey, III, Atty. Gen., Laura E. Mattson, Asst. Atty. Gen., St. Paul, for respondents.

Heard, considered and decided by RANDALL, P.J., and SEDGWICK and HUSPENI, JJ.

## OPINION

SEDGWICK, Judge.

Relator Sandra Drellack seeks review of the determination of the Commissioner of Economic Security that she was discharged from her employment for misconduct and was disqualified from the receipt of unemployment compensation benefits.

We affirm.

## FACTS

Relator Sandra Drellack began working for Inter-County Community Council, Inc. (I.C.C.C.), located in Oklee, Minnesota, in 1979 as a member of a weatherization crew. In the spring of 1983, she was promoted to crew foreman. Weatherization crews of I.C.C.C. completed weatherization improvement work on qualified homes throughout the northwestern part of Minnesota.

In a letter dated September 6, 1983, the executive director of I.C.C.C., Roy Jorgenson, directed the employees to correct their work habits including being on the job site from 8:00 A.M. to 4:30 P.M. and doing proper planning so that materials were on the job site. Attached to the letter was a copy of the employer's "Daily Operating Rules." The letter warned that failure to correct the deficiencies would result in disciplinary action.

On September 23, 1983, Drellack's crew finished the weatherization work required for a home located near Mentor, Minnesota before the end of the work day. Drellack and her two crew members quit work approximately one and one-half hours early. Drellack, as crew foreman, signed and submitted time cards showing falsely that she and her crew worked eight hours on the Hanson home. When questioned by respondent on September 27 and 30, 1983 concerning her crew's whereabouts on September 23, 1983, relator lied again and indicated that the crew had worked the entire day.

Following the September 30 meeting, Roy Jorgenson placed Drellack on a two-week suspension because she had left early on September 23, 1983, turned in inaccurate time records for that day, and denied doing so. The other Drellack crew members were placed on probation.

While Drellack was on suspension, she received a letter dated October 6 from Jorgenson concerning a door which had been ordered for a client's home and was then missing. The letter requested her to respond immediately. After receiving the letter, Drellack claims she phoned I.C.C.C. on Friday, October 7, 1983, and requested to speak to Jorgenson. However, he was not in and Drellack decided to resolve the door issue when she returned to work as scheduled following her suspension on October 17. Before Drellack returned to work, she was terminated by letter dated October 13, 1983. Jorgenson testified that Drellack was terminated for failure to respond to his October 6 letter. Jorgenson also admitted that there was no proof that Drellack had taken any I.C.C.C. materials and that I.C.C.C. could not accuse Drellack of stealing materials.

Relator filed an initial claim for unemployment compensation benefits effective January 1, 1984 and a claims deputy for the Department of Economic Security determined that relator was involuntarily separated from her employment for reasons other than misconduct. A department referee, in reversing the determination of the claims deputy, concluded that relator was discharged from her employment for misconduct and was disqualified from receiving benefits pursuant to Minn.Stat. § 268.-09, subd. 1(2). The decision of the department referee was affirmed by a representative of the Commissioner on November 19, 1984.

## ISSUES

1. Was there sufficient evidence in the record to sustain the findings of the Commissioner and was relator properly disqualified from the receipt of unemployment compensation benefits?

2. Did the Commissioner properly refuse to remand the matter to the department referee for the receipt of additional evidence on new theories of law?

## ANALYSIS

■ 1. Individuals are disqualified from receiving unemployment compensation benefits if they come within one of the disqualifying conditions set forth in Minn. Stat. § 268.09, subd. 1. The relevant portion of that statute provides:

An individual separated from employment under clauses (1), (2), or (3) shall be disqualified for waiting week credit and benefits. For separations under clauses (1) and (2), the disqualification shall continue until four calendar weeks have elapsed following his separation and the individual has earned four times his weekly benefit amount in insured work.

\* \* \* \* \* \*

(2) The individual was discharged for misconduct, not amounting to gross misconduct connected with his work or for misconduct which interferes with and adversely affects his employment.

Misconduct has been defined by the Minnesota Supreme Court as:

[C]onduct evidencing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which an employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful in-

tent or evil design, or to show an intentional and substantial disregard for the employee's duties and obligations to his employer. On the other hand, mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability of incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed misconduct. *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 375, 204 N.W.2d 644, 646 (1973). This court adopted the *Tilseth* standard in *Group Health Plan, Inc. v. Lopez*, 341 N.W.2d 294 (Minn.Ct.App.1983). The employer must establish by a preponderance of the evidence that the employee was discharged for misconduct. *Lumpkin v. North Central Airlines, Inc.*, 296 Minn. 456, 209 N.W.2d 397 (1973).

In its statement to the claim's deputy, respondent I.C.C.C. stated that Drellack was "terminated for failure to perform job properly." In the hearing before the referee, Jorgenson stated that he terminated Drellack because she failed to respond to his October 6 letter.

■ Drellack argues that the findings of the referee, adopted by the Commissioner, were incomplete and misleading. As she indicates, the findings do not note the suspension given to her on September 30 for the incidents involving the time cards.

Citing *Bautch v. Red Owl Stores, Inc.*, 278 N.W.2d 328 (Minn.1979), Drellack argues that the fact of suspension must be included in the findings of the Commissioner because the suspension operates as condonation of the misconduct upon which her suspension was based. The misconduct, thus, cannot be looked to as a basis for her discharge. In *Bautch*, the Minnesota Supreme Court found that the employer condoned the employee's behavior by failing to enforce a rule against it and by demonstration of the same conduct by the store manager. Such condonation was held to be a mitigating factor which might cause the employer to be deemed to have waived its right to discharge an employee on the basis of the misconduct.

■ We do not see how disciplining an employee by suspension in any way condones misconduct and prevents the employer from discharging the employee for that same misconduct. In this case, the employee was discharged after allegedly committing misconduct while she was on suspension for earlier misconduct. Her behavior may be considered as a whole in determining the propriety of her discharge and her qualification for unemployment compensation benefits. In *Flahave v. Lang Meat Packing*, 343 N.W.2d 683 (Minn.Ct.App. 1984), this court adopted the "last straw" doctrine enunciated in *Giddens v. Appeal Board of Michigan Employment Security Commission*, 4 Mich.App. 526, 145 N.W.2d 294, 298 (1966). Although unrelated to earlier misconduct, further misconduct occurring after her suspension could serve as the "last straw" supporting a termination of her employment.

■ Drellack also argues that, because she was on suspension at the time of the last incident of misconduct, that incident somehow has no legal significance. We find to the contrary. During her suspension, Drellack was still employed by I.C. C.C. and owed a duty to her employer. Violation of that duty could be found to be misconduct. The failure by the Commissioner to include the fact of Drellack's suspension was without effect.

The findings also state, "the employer suspected that the claimant had taken a door belonging to the employer." Drellack argues that inclusion of this unproven suspicion as a factual finding shifts the burden of proof to the employee. She urges this court to find the inclusion of these findings to be reversible error.

■ The employer must prove misconduct to the court by the greater weight of the evidence. *Lumpkin v. North Central, Inc.*, 296 Minn. 456, 209 N.W.2d 397 (1973). Here, the employer was held to that burden. In presenting evidence of her deceit with the time cards and failure to respond promptly to the October 6 letter, the employer proved misconduct by the greater weight of the evidence.

2. On appeal of the referee's findings before the Commissioner, Drellack sought a limited remand for the purpose of submitting additional evidence to prove that she made the telephone call to her supervisor on October 7. Proof of the telephone call, Drellack argues, would show that she did respond to the letter of October 6 and that dismissal was inappropriate. While she testified to the call before the referee and referred to phone bill as proof of the call, she noted that the bill was in her lawyer's office. She did not seek a continuance in order to submit the bill after testimony closed nor did she seek to submit a copy of the bill at the hearing before the referee. Drellack was at all times represented by counsel and the evidence was at all times available to her. There was no need to remand the matter to the referee for the taking of additional evidence.

Drellack also sought remand to introduce the personnel policy manual of I.C. C.C. to prove that it failed to follow its policy in terminating her. We have stated that, when an employer fails to follow its own disciplinary procedures, it cannot claim that a discharge was for misconduct. *Hoemberg v. Watco Publishers, Inc.,* 343 N.W.2d 676 (Minn.Ct.App.1984). Drellack argues that I.C.C.C. failed to follow its own disciplinary procedures and argues that introduction of the manual would have conclusively shown that Drellack's discharge was for reasons other than misconduct.

Although the manual was referred in passing by witnesses for the employer, claimant Drellack never raised the issue of alleged failure to follow the requirements of the manual until she appeared in arguments before the Commissioner. The Commissioner was well within her discretion in refusing to remand to the referee for admission of evidence on this new issue. Relator was well represented by counsel before the referee and had the opportunity to raise the issue and submit the manual and the issue to the referee. Relator's mere failure to submit this evidence at the hearing before the referee is insufficient to support a remand. *See Jeane Thorne Temporary Service, Inc. v. Elliott,* 351 N.W.2d 393 (Minn.Ct.App.1984).

Drellack also seeks a limited remand to show that she was the target of sex discrimination in her employment. She contends that this issue was raised before the referee by her testimony that her supervisor gave her a great deal of "flack" because she "outshined all of the men." She also notes that the record shows that she was treated differently from her male co-workers who also lied about leaving work early. She failed to connect the alleged "flack" she was receiving with her discharge and did not raise the issue of sex discrimination before the referee. Although she now argues that another supervisor was disciplined with lesser severity for a similar offense, the record does not support the claim. The issue of sex discrimination is not an appropriate issue for remand.

## DECISION

The record supports the decision of the Commissioner of Economic Security that relator Sandra Drellack was discharged for misconduct and is disqualified from the receipt of unemployment compensation benefits pursuant to Minn.Stat. § 268.09, subd. 1(2) (1984).

Affirmed.