*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2369**

Cathy Justice,
Relator,

vs.

Glacial Ridge Hospital,
Respondent,

Department of Employment and
Economic Development,
Respondent.

**Filed September 15, 2014
Affirmed
Hudson, Judge**

Department of Employment and
Economic Development
File No. 31512577-3

John E. Mack, Mack & Daby, P.A., New London, Minnesota (for relator)

Glacial Ridge Hospital, Glenwood, Minnesota (respondent)

Lee B. Nelson, Munazza A. Humayun, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

        Considered and decided by Hudson, Presiding Judge; Stauber, Judge; and Kirk, Judge.

UNPUBLISHED OPINION

**HUDSON**, Judge

Relator challenges the decision of an unemployment-law judge (ULJ) determining that she is ineligible for unemployment benefits because she was discharged for employment misconduct. Because substantial evidence supports the ULJ's determination that relator committed employment misconduct by displaying clearly a serious violation of the standard of behavior her employer had the right to expect, we affirm.

**FACTS**

Relator Cathy Justice was employed as a certified nursing assistant by respondent Glacial Ridge Hospital (Glacial Ridge) until she was discharged on August 7, 2013. The Minnesota Department of Employment and Economic Development (DEED) initially denied her unemployment benefits on the ground that she was discharged for employment misconduct; relator sought a hearing before a ULJ.

At the hearing, relator's supervisor testified that relator was discharged for ongoing insubordination issues, failing to work in a respectful manner, not wanting to complete required job duties, and continuing to leave the unit for long periods while on the job. The supervisor testified that in relator's 2008 evaluation, she discussed concerns about failing to complete basic patient cares, needing reminders of normal job duties, and experiencing conflicts with nursing staff. The supervisor acknowledged that relator received mostly average performance reviews; had no performance reviews in 2010, 2011, or 2013; and did not receive written warnings under the hospital's progressive discipline policy. Relator received a 2012 evaluation that generally rated her as meeting

expected standards, but noted that she "ha[d] a way of disappearing" when it was busy and "need[ed] to make herself more available." The supervisor testified that she met with relator in April 2013 and discussed her poor job performance.

The supervisor testified that relator was discharged after several reports from other nurses regarding her behavior from dates in January and August 2013. According to those reports, relator: (1) told other nurses that she had "other things to do" and was "a little busy" so that she could not assist with patient cares; (2) needed reminders to perform her normal work duties of giving baths and stocking supply cupboards; (3) failed to report that a patient stated that she was feeling ill, when the patient was later found slumped over in a recliner; (4) visited with housekeeping staff while patient call lights were going off and gave a patient a shower more than two hours later than promised; and (5) took a break longer than allowed.

A lead nurse testified that relator had problems with work flow when doing basic patient care, requiring "remedial steps." She testified that, sometimes, relator would not respond when a patient call light was on, instead talking on her cell phone or staying in the dining area on a different floor. Another nurse testified that, when asked to help, relator would at times say that she was busy and act defensive; for instance, when asked to help change a bed in a different department, relator reported to her supervisor that she could not help and appeared upset to be asked. That nurse testified that, on another occasion, relator did not feed a patient and failed to report that he had not been fed.

Relator testified that, in her performance reviews, she was told to "do[] better," but she was not spoken to about all of the issues documented on her discharge. She stated that if she failed to answer a call light, it meant she was going to another patient, and that she did not refuse to help the nurses, but that "when it's very busy [she] could be in any given place." She testified that, on the day the patient went unfed, she had placed the tray on the charge nurse's desk and fulfilled her other duties because she believed the charge nurse would deliver it.

The ULJ determined that relator had been discharged because of employment misconduct and was therefore disqualified from receiving unemployment benefits. The ULJ found that the testimony of Glacial Ridge's employees was more credible than relator's testimony and that relator's conduct, which had the potential to seriously jeopardize patient health and safety, displayed clearly a violation of the employer's interests and standard of behavior the employer had a right to expect. The ULJ further found that, although relator's supervisor did not provide her with a performance review or warnings before discharging her, unemployment law did not require ongoing warnings or other disciplinary steps before an employee's discharge. Relator sought reconsideration, which was denied. This certiorari appeal follows.

**DECISION**

This court reviews a ULJ's decision to determine whether substantial rights were prejudiced because the findings, inferences, conclusions, or decision are unsupported by substantial evidence in view of the record as a whole or affected by an error of law. 2014 Minn. Laws ch. 271, art. 1, § 1 (to be codified at Minn. Stat. § 268.105, subd. 7(d)

4

(2014)). An employee who is discharged for employment misconduct is ineligible to receive unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2012). "Employment misconduct means any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." Minn. Stat. § 268.095, subd. 6(a) (2012). Employment misconduct does not include inefficiency or inadvertence, simple unsatisfactory conduct, poor performance because of inability or incapacity, or good-faith errors in judgment. *Id.*, subd. 6(b) (2012).

Whether an employee committed misconduct sufficient to disqualify him or her from receipt of unemployment benefits presents a mixed question of law and fact. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011). "Whether the employee committed a particular act is a fact question, which we review in the light most favorable to the decision and will affirm if supported by substantial evidence." *Dourney v. CMAK Corp.*, 796 N.W.2d 537, 539 (Minn. App. 2011). But this court reviews de novo whether a particular act amounts to disqualifying misconduct. *Stagg*, 796 N.W.2d at 315.

Relator argues that her conduct did not rise to the level of disqualifying misconduct because it did not amount to insubordination, but was, at best, inefficiency or poor performance. To support her argument, she cites a definition of insubordination in a supreme court case dealing with the statutory requirements for discharging a teacher. *See Ray v. Minneapolis Bd. of Ed.*, 295 Minn. 13, 17, 202 N.W.2d 375, 378 (1972). "The Minnesota courts have held that an employee's insubordination may constitute

5

misconduct." *Deike v. Gopher Smelting*, 413 N.W.2d 590, 592 (Minn. App. 1987). But the definition of employment misconduct for the purpose of determining eligibility for unemployment benefits specified by statute is exclusive, and no other definition applies. Minn. Stat. § 268.095, subd. 6(e) (2012).

Relator also cites a previous common-law definition of employment misconduct as requiring "wilful," "wanton," or "deliberate" behavior, as stated in *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973). The *Tilseth* definition was superseded by statute in 1997 when the Minnesota legislature defined employment misconduct. *Houston v. Int'l Data Transfer Corp.*, 645 N.W.2d 144, 149 (Minn. 2002). *Tilseth*-grounded cases "remain instructive as to the areas in which the *Tilseth* and [current] statutory definitions overlap." *Lawrence v. Ratzlaff Motor Express Inc.*, 785 N.W.2d 819, 823 (Minn. App. 2010), *review denied* (Minn. Sept. 29, 2010). But even assuming that the current statutory language, which excludes "inefficiency or inadvertence" from the definition of employment misconduct, requires more than ordinary negligence for employment misconduct, the ULJ did not err by determining that relator's conduct met the statutory standard. *See* Minn. Stat. § 268.095, subd. 6(b)(2). "As a general rule, refusing to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct." *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). Relator's employer presented evidence of at least five incidents in which relator declined to fulfill her job responsibilities. "[An employee's behavior] may be considered as a whole in determining the propriety of her discharge and her qualification for unemployment compensation benefits." *Drellack v. Inter–Cnty. Cmty.*

*Council, Inc.*, 366 N.W.2d 671, 674 (Minn. App. 1985). Taken as a whole, relator's behavior was sufficient to sustain the ULJ's determination that relator committed employment misconduct.

Relator argues that the record does not contain substantial evidence that the nurses gave her direct orders relating to her job responsibilities or that they had authority to do so. But evidence of deliberate work avoidance may also support a determination that an employee engaged in employment misconduct. *See Krantz v. Larco Div.*, 363 N.W.2d 833, 834 (Minn. App. 1985) (concluding that relator's work record of unnecessary delays and deliberate work avoidance was sufficient to rise to the level of misconduct under the *Tilseth* definition). Here, the record contains evidence that relator avoided certain job duties under circumstances permitting a reasonable inference that she deliberately avoided those duties, including affirmatively declining to assist other nurses with necessary tasks.

Relator also maintains that her employer's failure to follow disciplinary procedures by giving warnings about her behavior precludes a determination that she was discharged for employment misconduct. The Minnesota Supreme Court, however, has held that "an employee's expectation that the employer will follow its disciplinary procedures has no bearing on whether the employee's conduct violated the standards the employer has a reasonable right to expect or whether any such violation is serious." *Stagg*, 796 N.W.2d at 316. Therefore, we reject relator's argument.

7

Relator finally argues that the ULJ erred by relying on unreliable and uncorroborated hearsay evidence in making a determination of employment misconduct. In particular, relator argues that a written summary of complaints about her behavior, which was not signed by the complaining nurses or noted in her performance review, does not constitute substantial evidence supporting the ULJ's determination. Applicable rules permit a ULJ to "receive any evidence that possesses probative value, including hearsay, if it is the type of evidence on which reasonable, prudent persons are accustomed to rely in the conduct of their serious affairs." *See* 39 Minn. Reg. 147, 154 (Aug. 4, 2014) (to be codified at Minn. R. 3310.2922 (Supp. 2014)). Under this rule, the fact that testimony is based on hearsay or concerns documents not presented in evidence does not mandate its exclusion, but is a factor for the ULJ to weigh in judging the credibility of the witnesses. *See Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 532–33 (Minn. App. 2007) (noting that the ULJ evaluates witness credibility using "factors that bear on believability and weight"). Here, in addition to the summary of complaints, the ULJ heard testimony from two nurses who worked with relator and corroborated the behavior that formed the basis for the complaints. And the ULJ made an express finding that the testimony of the employer's witnesses was more credible than relator's testimony. This court will "defer to [a ULJ's] credibility determinations . . . that are supported by substantial evidence." *Ywswf*, 726 N.W.2d at 527. Based on the record presented, the ULJ did not err by finding that relator's conduct clearly displayed a serious violation of the standards of behavior her employer had the right to reasonably expect and

determining that she is ineligible for unemployment benefits based on employment misconduct.  *See* Minn. Stat. § 268.095, subd. 6(a).

**Affirmed.**