*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0947**

Melissa Jungen,
Relator,

vs.

Sanders, Inc.,
Respondent,

Department of Employment and
Economic Development,
Respondent.

**Filed February 9, 2015
Affirmed
Hudson, Judge**

Department of Employment and
Economic Development
File No. 32220530-3

Melissa Jungen, Rock Rapids, Iowa (pro se relator)

Sanders, Inc., Ellsworth, Minnesota (respondent employer)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Larkin, Presiding Judge; Peterson, Judge; and Hudson, Judge.

**HUDSON**, Judge

In this certiorari appeal, relator challenges the decision of an unemployment-law judge (ULJ) denying her unemployment benefits on the ground that she was discharged for employment misconduct. Because the ULJ did not err by determining that relator's conduct of improper cell-phone use, poor attendance, and insubordination met the statutory standard for employment misconduct, thus rendering her ineligible for benefits, we affirm.

**FACTS**

Relator Melissa Jungen was employed as a dispatcher by Sanders, Inc., a trucking business, from September 2013 until her discharge on February 4, 2014. The Minnesota Department of Employment and Economic Development (DEED) issued an initial determination that Jungen was ineligible for unemployment benefits based on her discharge for employment misconduct; Jungen appealed that determination.

At a hearing before a ULJ, Jungen's supervisor testified that, on October 21, 2013, she spoke to Jungen about her job performance, including talking too fast and not giving truckers all necessary information for their loads. A few days later, the supervisor spoke to Jungen about not bringing her personal problems to work, after Jungen was observed talking on her personal cell phone in contravention of company policy prohibiting personal cell-phone use.

The supervisor also testified that, on December 23, 2013, she and the company president talked with Jungen about missing work because Jungen would call in and say

that she was not coming in, or come in late, without giving a reason. At the December meeting, Jungen was informed again that some of the drivers had complained about her talking too fast.

The supervisor testified that, on February 4, after the supervisor finished a phone call with a driver, Jungen stated that the supervisor should have given the driver more information and muttered something under her breath. The supervisor testified that, ordinarily, until drivers had unloaded their trucks, they were not given information about their next load, but that Jungen disagreed. The supervisor also testified that other employees had observed Jungen's frequent text messaging. The supervisor testified that Jungen was discharged because she had been cautioned a number of times about her cell-phone use, she told the supervisor how to do her job, and the supervisor had "had enough."

A substitute supervisor testified that drivers had told him that they were unable to understand information from Jungen's dispatches and that she would mutter under her breath to express disagreement with what she was told. He testified that he saw Jungen frequently use her personal cell phone during business hours, taking attention away from her work. A bookkeeper testified that she had also witnessed Jungen texting, and there had been discussions that Jungen was not performing a lot of work.

Jungen testified that she was "dumbfounded" when she was discharged. She testified that when drivers were waiting for their trucks to be unloaded, she had seen the supervisor give them a dispatch load, so that when the supervisor told her not to do that, she reminded the supervisor that the supervisor usually did it. She testified that although

3

she was told not to keep her cell phone at her desk during work hours, she was not prohibited from using her cell phone at work. She acknowledged that she had her phone on her desk and replied to important texts from her children, but asserted that she almost always used the phone outside on her breaks and was only told once about improper cell-phone use.

Jungen testified that she was never threatened with discharge and that she became angry only when the supervisor spoke to her sarcastically because she did not do something exactly the way the supervisor wanted it done. She indicated that she had been told that she could take more responsibility, but the supervisor ended up taking control, and the supervisor "ha[d] a hard time letting me [in] on any of her job responsibilities because she's a perfectionist I guess."

The ULJ issued a decision determining that Jungen had been discharged for employment misconduct and was therefore ineligible to receive unemployment benefits. The ULJ found that Jungen's testimony that all of her personal cell-phone calls occurred on breaks was not as credible as that of company employees who noted use of her cell phone at her desk. The ULJ found that a preponderance of the evidence showed that Jungen expressed frustration and anger with her supervisor, and the ULJ determined that Jungen's continuing inappropriate conduct and language when receiving directions or feedback, as well as her personal cell-phone use during business hours, displayed clearly a serious disregard of the employer's interest and standards of behavior the employer had a right to expect. Jungen requested reconsideration, and the ULJ affirmed the decision. This certiorari appeal follows.

4

**D E C I S I O N**

This court may remand, reverse, or modify the decision of a ULJ if the substantial rights of the relator may have been prejudiced because the findings, conclusion, or decision are in violation of constitutional provisions or unsupported by substantial evidence. Minn. Stat. § 268.105, subd. 7(d)(1), (5) (2014). Substantial evidence means "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety." *Minn. Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency*, 644 N.W.2d 457, 466 (Minn. 2002).

An employee who is discharged for employment misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4 (2014). Employment misconduct means "any intentional, negligent, or indifferent conduct . . . that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.*, subd. 6(a) (2014). Employment misconduct does not include inefficient or inadvertent conduct, simple unsatisfactory conduct, poor performance because of inability or incapacity, or good-faith errors in judgment. Minn. Stat. § 268.095, subd. 6(b)(2), (3), (5), (6) (2014).

Jungen argues that the ULJ erred by determining that she was ineligible for benefits based on employment misconduct. Whether an employee engaged in disqualifying conduct is a mixed question of law and fact. *Stagg v. Vintage Place, Inc.*, 796 N.W.2d 312, 315 (Minn. 2011). Whether an employee committed a particular act is

5

a factual issue. *Scheunemann v. Radisson S. Hotel*, 562 N.W.2d 32, 34 (Minn. App. 1997). But whether a particular act amounts to employment misconduct presents a question of law, which this court reviews de novo. *Stagg*, 796 N.W.2d at 315. We review the ULJ's factual findings "in the light most favorable to the decision" and defer to the ULJ's credibility determinations. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006).

Generally, refusing to abide by an employer's reasonable policies and requests constitutes disqualifying misconduct. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). Jungen argues that her employer had no written policy prohibiting cell-phone use. But her supervisor testified that she had orally informed Jungen of a company policy restricting personal cell-phone calls. And the ULJ found not credible Jungen's testimony that she took all personal calls on breaks, crediting instead the testimony of company witnesses that she frequently used her cell phone at her desk during work hours. "Credibility determinations are the exclusive province of the ULJ and will not be disturbed on appeal." *Bangtson v. Allina Med. Grp.*, 766 N.W.2d 328, 332 (Minn. App. 2009) (quotation omitted). Jungen also maintains that she never used insubordinate language with her supervisor. But we defer to the ULJ's finding that Jungen's testimony was not plausible, crediting instead her supervisor's testimony that she expressed frustration and anger with the supervisor. *See id.* And although Jungen further argues that she never received a written warning, an employer is not required to give a warning before discharging an employee for employment misconduct. *Auger v. Gillette Co.*, 303 N.W.2d 255, 257 (Minn. 1981).

6

Jungen argues that the record contains inconsistent reasons for her discharge. She maintains that during the hearing, the employer's witnesses emphasized her attendance issues and improper cell phone use, but her supervisor testified that she was discharged instead because the supervisor "had enough" and it "was not working." *See* Minn. Stat. § 268.095, subd. 4(1) (stating that to be disqualified from receiving unemployment benefits, a person must be "discharged *because of* employment misconduct") (emphasis added). But an employee's behavior "may be considered as a whole in determining the propriety of her discharge and her qualification for unemployment compensation benefits." *Drellack v. Inter–Cnty. Cmty. Council, Inc.*, 366 N.W.2d 671, 674 (Minn. App. 1985). The ULJ's decision reflects the ULJ's consideration of Jungen's behavior as a whole, including her improper cell-phone use and inappropriate behavior and language, in determining that she committed employment misconduct.

Jungen asserts that her actions reflected only a good-faith attempt to learn her job and did not display a substantial lack of concern for her employment. But on this record, substantial evidence supports the ULJ's determination that her conduct displayed clearly a serious disregard of the standards of behavior the employer had the right to reasonably expect, and the ULJ did not err by denying her unemployment benefits based on employment misconduct.

**Affirmed.**