*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2195**

Marion Clements,
Relator,

vs.

Mentor Management, Inc.,
Respondent,

Department of Employment and
Economic Development,
Respondent.

**Filed August 3, 2015
Affirmed
Hudson, Judge**

Department of Employment and
Economic Development
File No. 32821293-3

Marion Clements, Willmar, Minnesota (pro se relator)

Mentor Management, Inc., c/o ADP-UCM / The Frick Co., St. Louis, Missouri (respondent employer)

Lee B. Nelson, Munazza Humayun, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

        Considered and decided by Smith, Presiding Judge; Hudson, Judge; and Worke, Judge.

UNPUBLISHED OPINION

**HUDSON**, Judge

In this certiorari appeal, relator challenges the decision of an unemployment-law judge (ULJ) that she was discharged because of employment misconduct when she made errors in administering medication. She argues that she was harassed by a co-worker and that her working conditions were distracting. We affirm.

**FACTS**

Relator Marion Clements worked from 2006 to 2014 as a direct support professional in a foster home for adults with disabilities operated by respondent Mentor Management, Inc. Clements was discharged based on approximately 12 incidents in which she committed errors in administering medication to residents. A supervisor documented that, in 2014, Clements initialed on a medication pack that she gave a resident medication twice in the same day, which amounted to a double dose. In additional incidents that year, Clements failed to give medication as ordered by a physician, which resulted in a missed dose and mistakenly administered two doses of a medication at the same time.

Clements applied for unemployment benefits, indicating that she had mistakenly administered one medication twice because she was distracted and alone on duty. She acknowledged that she had been previously warned after an incident because she forgot to give a medication at a new time. The Minnesota Department of Employment and Economic Development (DEED) initially determined that Clements was eligible to receive benefits, and the employer contested that determination.

At a hearing before a ULJ, Clements did not contest that she made medication errors. She testified that the employer's version of events was "basically true" and that she did not remember the time that she allegedly gave a double dose of medication, but that it "could have happened." She stated that one of the errors occurred when she was very distracted by a resident's difficult behavior while she was attempting to give medication. She stated that on another day when an error occurred, a co-worker, who had been harassing her, had also been working. Clements indicated that the other employee was "very upsetting" to her and made her "very nervous," so that at times she "could hardly function." She testified that "part of [her] problem [was] that [she] was just upset" based on the other employee's behavior, which allegedly included crossing out Clements's documentation on patient charts and interfering with her personal property. Clements also denied working on two of the days when medication errors occurred.

The ULJ determined Clements to be ineligible for unemployment benefits. The ULJ found that Clements did not specifically dispute the errors cited by the employer, and although there were no allegations that she intentionally failed to administer medication properly, she made frequent medication errors throughout her employment. The ULJ found that Clements failed to meet the high standard required in working with vulnerable adults and that her negligent actions displayed clearly a serious violation of the standards that the employer had a right to reasonably expect.

Clements requested reconsideration, and the ULJ affirmed the decision. The ULJ found that, even though Clements alleged that she had not worked when one of the medication errors occurred, she had numerous other medication errors, including three in

3

2014; that her repeated medication errors were negligent; and that she was discharged because of employment misconduct. This certiorari appeal follows.

## DECISION

This court reviews a ULJ's decision to determine whether a party's substantial rights may have been prejudiced because the ULJ's findings, inferences, conclusions, or decision are unsupported by substantial record evidence or affected by an error of law or procedure. Minn. Stat. § 268.105, subd. 7(d)(3)-(5) (2014). An employee who was discharged from employment because of employment misconduct is ineligible to receive unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2014). "Employment misconduct" is defined as "any intentional, negligent, or indifferent conduct . . . that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.,* subd. 6(a) (2014). Employment misconduct does not include inefficiency or inadvertence, simple unsatisfactory conduct, poor performance because of inability or incapacity, or good-faith errors in judgment. *Id.*, subd. 6(b) (2014).

Whether an employee committed employment misconduct presents a mixed question of fact and law. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). "Whether the employee committed a particular act is a question of fact." *Id.* We review the ULJ's factual findings "in the light most favorable to the decision" and defer to the ULJ's credibility determinations. *Id.* We will not disturb the ULJ's factual findings when the evidence substantially sustains them. Minn. Stat. § 268.105, subd. 7(d)(5). Whether the employee's act constitutes employment misconduct presents a

4

question of law, which we review de novo. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011).

We initially note that, in briefing, Clements did not challenge the ULJ's finding that she made medication errors, but she appears to argue that this conduct did not rise to the level of employment misconduct. This court may decline to reach an issue in the absence of adequate briefing. *State Dep't of Labor & Indus. v. Wintz Parcel Drivers, Inc.*, 558 N.W.2d 480, 480 (Minn. 1997); *see also Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982) (deeming waived an issue because it was not argued in appellate briefs). But because Clements presumably wished to argue that her conduct was not employment misconduct, we nonetheless address that issue. *See Liptak v. State ex rel. City of New Hope*, 340 N.W.2d 366, 367 (Minn. App. 1983) (permitting "some latitude and consideration . . . by all courts to persons appearing pro se").

The ULJ found that Clements made repeated medication errors, which were negligent, and that she was discharged because of employment misconduct. Employers have the right to expect employees to abide by their reasonable policies and requests. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). And courts are particularly reluctant to second-guess an employer's considered judgment relating to a patient's best interests. *See Ress v. Abbott Nw. Hosp., Inc.*, 448 N.W.2d 519, 525 (Minn. 1989) (stating that "if there is one unique area of employment law where strict compliance with protocol and militarylike discipline is required, it is in the medical field").

5

Clements acknowledged that "what they've said is basically true . . . I made the errors . . . I can say that." She argues, however, that beginning in February 2014, a co-worker's harassment caused her to have difficulty thinking clearly at work. She also maintains that "[c]onditions at the house on the date of [her] last error were chaotic, not calm and quiet at all, as they are meant to be." But Clements's arguments, that a co-worker was harassing her and that her working conditions were not quiet, do not excuse her own negligent acts with regard to medication errors.

Clements's medication errors—which included twice administering a double dose of medication and once failing to administer a dose of medication—are serious errors. Further, even excluding the errors that occurred when she was allegedly being harassed or when she states that she was not working, Clements made approximately eight medication errors from 2007 to 2013. An employee's behavior "may be considered as a whole in determining the propriety of her discharge and her qualification for unemployment compensation benefits." *Drellack v. Inter–Cnty. Cmty. Council, Inc.*, 366 N.W.2d 671, 674 (Minn. App. 1985). The ULJ's decision appropriately reflects consideration of Clements's behavior as a whole in determining that she committed employment misconduct.

Substantial evidence supports the ULJ's findings that Clements's repeated medication errors were negligent and showed clearly a serious violation of the standards that the employer had the right to reasonably expect. The ULJ did not err by determining

6

that Clements was discharged for employment misconduct and that she is ineligible for unemployment benefits.

**Affirmed.**