*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-0092

Balla Musa,
Relator,

vs.

My Brothers' Keeper,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed August 24, 2015**
**Affirmed**
**Halbrooks, Judge**

Department of Employment and Economic Development
File No. 32744756-3

John A. Fabian, Jenny M. Helling, Fabian May & Anderson PLLP, Minneapolis, Minnesota (for relator)

Theresa M. Thompson, Krista A.P. Hatcher, David G. Waytz, Fredrikson & Byron, P.A., Minneapolis, Minnesota (for respondent My Brothers' Keeper)

Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department of Employment and Economic Development)

Considered and decided by Halbrooks, Presiding Judge; Cleary, Chief Judge; and Hooten, Judge.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

Relator challenges the decision of the unemployment-law judge (ULJ) that he is ineligible for unemployment benefits because he was discharged for employment misconduct, arguing that he did not commit misconduct by failing to attend a disciplinary meeting. We affirm.

**FACTS**

Relator Balla Musa was employed by respondent My Brothers' Keeper (MBK), an operator of group homes, as a full-time designated coordinator and supervisor from August 2004 to July 15, 2014. Musa was discharged after failing to report to a disciplinary meeting on July 14. The July 14 meeting was to be a continuation of a July 11 meeting with the executive director and the housing director, at which they had attempted to issue Musa a written warning. Musa contends that he was unaware of the July 14 meeting. Musa reported for work on July 15, at which time the executive director and housing director advised him that he was being discharged for failing to attend the July 14 meeting.

Musa applied for unemployment benefits and was determined to be eligible. The employer appealed, and a ULJ held a hearing on October 6 and 9 at which Musa and four MBK employees testified. Musa was represented by counsel at the hearing.

The ULJ determined that MBK "discharged Musa because he failed to report to the meeting on July 14, 2014, and because he was disrespectful to [supervisors] on multiple occasions" and that Musa was ineligible for unemployment benefits because he

was discharged for employment misconduct. Upon reconsideration, the ULJ affirmed the decision. Musa now appeals.

## D E C I S I O N

Musa argues on appeal that (1) the ULJ's findings that he was aware of the July 14 meeting and that he was discharged in part for disrespectful behavior are not substantially sustained by the evidence, (2) the ULJ erred in determining that his actions constituted employment misconduct, and (3) the ULJ erred in denying his request for an additional evidentiary hearing on reconsideration.

We review a ULJ's decision to determine whether a party's substantial rights were prejudiced because the decision is "(1) in violation of constitutional provisions; (2) in excess of the statutory authority or jurisdiction of the department; (3) made upon unlawful procedure; (4) affected by other error of law; (5) unsupported by substantial evidence in view of the entire record as submitted; or (6) arbitrary or capricious." Minn. Stat. § 268.105, subd. 7(d) (2014). Whether an employee engaged in employment misconduct presents a mixed question of law and fact. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). Whether an employee committed a particular act is a question of fact. *Id.* Whether an act constitutes employment misconduct is a question of law, which this court reviews de novo. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011).

Musa challenges the ULJ's factual findings that he (1) engaged in a pattern of disrespectful behavior, (2) was aware of the July 14 meeting, and (3) was discharged based on missing the July 14 meeting and his disrespectful behavior.

We review the ULJ's factual findings in the light most favorable to the decision. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). Courts will not disturb the ULJ's factual findings when the evidence substantially sustains them. *See* Minn. Stat. § 268.105, subd. 7(d). The ULJ found:

- In the fall of 2013, Musa applied for the position of housing director but was not promoted.

- On March 28, 2014, the housing director attempted to issue a write-up to Musa because required programs were not documented. Musa became argumentative and raised his voice. The housing director called another employee into the room to be a witness because she felt intimidated by Musa. Musa continued to argue.

- On July 7, 2014, the housing director e-mailed Musa, asking him to attend a meeting on July 10 to discuss an incident from the previous week involving Musa's discipline of a direct support professional. On July 8, Musa replied that July 10 would not work for him, asked for an agenda, and informed the housing director that he would be tape recording the meeting. On July 9, the executive director e-mailed Musa, asking him to meet on July 11 at 8:30 a.m. On July 11, Musa replied that he could not make 8:30 a.m. because he had various things to do, including passing medications. The executive director replied, "Please be at the office at 9:00 today." Musa responded that he was unavailable because he needed to give a client a ride at 9:30 but nevertheless reported at 9:00.

- At the July 11, 2014 meeting, the executive director and housing director attempted to issue a written warning to Musa. Musa reminded them that he was recording the meeting, argued with them loudly, talked over them, and refused to sign the warning.

4

- Because they did not finish by 9:30, the three discussed when to continue the meeting. The executive director told Musa she wanted to continue the meeting on July 14. Musa responded that July 14 was his day off. The executive director told him he could come in on his day off, much like he expected of his own direct reports. As Musa was leaving, the executive director said in a voice loud enough for Musa to hear, "I will see you Monday morning at 9:00 a.m."

- Musa did not report for the July 14 meeting even though he knew he was expected to be there.

The record supports these factual findings. Of particular note, the findings about the July 7-11 e-mails are supported by the copies of the e-mails, which are in the record, and with respect to the July 11 meeting, the executive director testified that Musa was argumentative and refused to sign the "performance correction" document. It is undisputed that Musa recorded the July 11 meeting. It is also undisputed that the meeting had not concluded by 9:30, so the parties discussed when to reconvene. Musa testified that the executive director suggested Monday, July 14, and he responded that Monday was his day off. The executive director testified that she told him that he should come in anyway.

Two employees testified that, when the July 11 meeting ended, the executive director said to Musa, "I will see you on Monday at 9:00 a.m." One of these employees testified that she thought Musa heard the statement because "[the executive director] spoke loud enough for him to hear" and that Musa would have understood that the meeting was mandatory because of her tone of voice.

Musa generally denied that he was uncooperative, aggressive, disrespectful, and insubordinate, and specifically denied hearing the executive director order him to report

5

to a meeting on July 14. But the ULJ rejected his testimony and credited the testimony of the employer's witnesses as to any disputed facts.

This court defers to the ULJ's credibility determinations when (1) they are supported by substantial evidence and (2) the ULJ sets forth a valid reason for crediting or discrediting testimony that may significantly affect the ultimate decision. *See Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 532-33 (Minn. App. 2007); *see also* Minn. Stat. § 268.105, subd. 1a(a) (2014) (providing that the ULJ "must set out the reason for crediting or discrediting that testimony" when the witness's credibility "has a significant effect on the outcome of the decision").

The ULJ credited the testimony of the employer's witnesses because "it was extremely detailed and specific, and because it described the more likely series of events. Furthermore, the fact that Musa was so upset about being passed over for the promotion makes it more likely that he engaged in disrespectful behavior." In doing so, the ULJ provided valid reasons as required by statute. *See Ywswf*, 726 N.W.2d at 533 (providing that the level of detail and specificity and reasonableness of the testimony in light of other evidence are permissible factors in evaluating credibility).

And the ULJ's reasons are supported by the record. The employer's witnesses testified consistently about critical facts—for example, that the executive director told Musa to report to a meeting at 9:00 on July 14. Because the ULJ gave reasons for her credibility findings and the findings are supported by substantial evidence, there is no basis in the record to overturn the credibility findings.

The parties disagree whether Musa was discharged solely for missing the July 14 meeting or for multiple occasions of insubordination and disrespectful behavior culminating in his failure to attend the July 14 meeting. The ULJ found that it was the latter. We note that because the purpose of the July 14 meeting was to impose discipline for disrespectful behavior, the distinction may not have a practical impact.

MBK's paperwork submitted to DEED provides that the reason for discharge was "The claimant failed to call off or show up for a mandatory meeting." But testimony by Musa's supervisors supports the ULJ's finding that multiple occasions of disrespectful behavior were also part of the reason for discharge. The executive director testified at various times that the discharge was "a culmination of a lot of issues . . . [h]is attitude and behavior," "a total lack of respect for [the housing director] and myself," and for missing the meeting on July 14. And the housing director testified that "the final" reason for discharge was that Musa did not call or show up on July 14.

Deferring to the ULJ's credibility determinations and viewing the factual findings in the light most favorable to the decision, the ULJ's finding that MBK discharged Musa "because he failed to report to the meeting on July 14, 2014, and because he was disrespectful to [the executive director and housing director] on multiple occasions" is supported by substantial evidence in view of the record as a whole.

**II.**

Musa argues that he did not commit employment misconduct because he was unaware of the July 14 meeting and his single failure to attend a meeting was not employment misconduct. He does not argue that multiple occasions of disrespectful

behavior plus missing the July 14 meeting are insufficient to collectively constitute employment misconduct.

"Employment misconduct" is in relevant part "any intentional, negligent, or indifferent conduct . . . that displays clearly . . . a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee." Minn. Stat. § 268.095, subd. 6(a) (2014). Whether employee conduct amounts to a serious violation of the standards of behavior the employer has the right to reasonably expect of employees is an objective determination that turns on whether the employer's expectation was reasonable under the circumstances. *Jenkins v. Am. Express Fin. Corp.*, 721 N.W.2d 286, 290 (Minn. 2006).

Refusing to follow an employer's reasonable requests generally constitutes employment misconduct. *Schmidgall*, 644 N.W.2d at 804. Insubordinate behavior has also been held to constitute misconduct. *See, e.g.*, *Montgomery v. F & M Marquette Nat'l Bank*, 384 N.W.2d 602, 605 (Minn. App. 1986) (rudeness to customers, fellow employees, and supervisor constitutes misconduct), *review denied* (Minn. June 13, 1986); *Snodgrass v. Oxford Props., Inc*., 354 N.W.2d 79, 80 (Minn. App. 1984) (refusal to cooperate with supervisor or take directions constitutes misconduct). And Musa acknowledges that absenteeism can in some circumstances amount to employment misconduct.

Because we uphold the ULJ's findings that Musa engaged in multiple occasions of disrespectful behavior and was aware of but failed to attend the July 14 meeting, we also uphold the ULJ's determination that Musa seriously violated the employer's reasonable

8

expectations and showed a substantial lack of concern for his employment. The ULJ considered the totality of Musa's conduct, which is not improper. An employee's behavior "may be considered as a whole in determining the propriety of [his] discharge and [his] qualification for unemployment compensation benefits." *Drellack v. Inter-Cnty. Cmty. Council, Inc.*, 366 N.W.2d 671, 674 (Minn. App. 1985).

### III.

Musa argues in the alternative that the ULJ erred by denying his request for an additional evidentiary hearing to review recordings he made of the July 11 meeting and the July 15 discussion that Musa contended corroborated his testimony that (1) he was not given a clear directive at the end of the July 11 meeting to attend a meeting on July 14 and (2) on July 15, Musa immediately informed the housing director that he was not aware of the July 14 meeting.

In deciding a request for reconsideration, a ULJ "must not consider any evidence that was not submitted at the hearing, except for purposes of determining whether to order an additional hearing." Minn. Stat. § 268.105, subd. 2(c) (2014). An additional hearing is warranted if additional evidence "would likely change the outcome . . . and there was good cause for not having previously submitted the evidence" or would show that evidence submitted at the hearing was likely false and had an effect on the outcome. *Id*.

Musa contends that he did not submit the recordings before or at the hearing because "he did not know that MBK's witnesses were going to lie about what transpired" at those meetings. But the executive director expressly noted early in the hearing that

9

Musa had possession of the recordings and that they were not in evidence. Musa's counsel made no attempt to offer the recordings that day or at the continued hearing three days later.

After receiving Musa's request for reconsideration, the ULJ reviewed the recordings and determined that an additional hearing was not necessary. The ULJ found that Musa did not have good cause for not having previously submitted the recordings and that the recordings would not change the outcome. The ULJ noted that, "Despite his claims to the contrary, the [July 11 meeting] recording suggests that Musa knew, or should have known, that he was expected to meet with the employer on Monday, July 14, 2014."

Having reviewed the July 11 recording, we agree that its consideration would not change the outcome. The content is consistent with the employer's witnesses' testimony, which the ULJ credited. And although the recording does not conclusively resolve the disputed issue of whether Musa subjectively knew that he was expected on July 14, it confirms that the executive director made her expectations clear.

With respect to the July 15 recording, the ULJ acknowledged after review that it invalidated her finding that Musa did not tell the housing director on July 15, 2014 that he was unaware of the July 14 meeting. But the ULJ determined that this inaccuracy was not material and would not change the outcome.

Because the ULJ's finding that Musa was aware of the July 14 meeting does not depend on whether Musa denied knowledge of that meeting on July 15, we conclude that the ULJ properly determined that the July 15 recording also would not change the

10

outcome of the decision. Nor does either recording show that there was false testimony at the hearing that had an effect on the outcome. And we discern no good cause for Musa's failure to submit the evidence earlier. We therefore conclude that the ULJ properly denied Musa's request for an additional evidentiary hearing to consider the July 11 and 15 recordings.

**Affirmed.**